*DANIPR, J.
Upon the case agreed and submitted to the Court below, and now brought under revision here, two questions arise which have been very elaborately discussed at the bar: 1. Whether the appellee, Colston, by his endorsement, subjected himself to any liability; and 2. If so, whether he is liable in the form of contract and mode in which the appellant seeks to charge him.
It is well settled, that a blank endorsement on a negotiable instrument, blank as to date or amount at the time of the endorsement, if made for the purpose of giving a credit to the drawer, is as effectual to bind the endorser for any amount with which the instrument may be filled up by the drawer, or an innocent holder for value, as if the instrument had been complete at the time of the endorsement. In the case of Russel v. Langstaffe, Doug. R. 514, the Court of King’s bench held, in the language of Rord Mansfield, that such an endorsement “is a letter of credit for an indefinite sum”—that the endorser, in effect said, ‘ ‘trust the drawer to any amount, and I will be his security.” So in Schultz v. Astley, 29 Eng. C. L. R. 414, which was the case of an acceptance written on a paper, before entirely blank, it was held, that the blank acceptance was an acceptance of the bill afterwards put upon it; and that there is no distinction in principle, when the bill has passed into the hands of third persons, between holding the acceptor liable to a given amount, when the bill is afterwards drawn in the name of the party who has obtained the acceptance, and when it is drawn by a stranger who becomes the drawer at the instance of the party to whom the acceptance is given. And in the case of Douglass v. Scott & Fry, decided by this Court, 8 Leigh 43, where the paper was signed in blank, and endorsed in blank, and delivered to another to be filled up and used as a negotiable instrument to raise money on, the decision was founded on the proposition, *that the negotiable note afterwards drawn over the signature of the maker, did, together with its endorsements, bind all the parties- *80 to the same extent as if the maker had signed, and the endorsers endorsed, the paper in its perfect form.
Of a promissory note which is not in its form negotiable, and which has never been placed by our statutes on the footing of bills of exchange, there cannot, technically speaking, be an endorser. Yet no reason is perceived why one who endorses a paper in blank, and delivers it to another, with authority to fill up the paper with an ordinary promissory note, and then to use it for the purpose of raising money, should not be precluded from escaping liability by objecting the incompleteness of the instrument at the time of endorsement, equally with one who conducts himself in the like manner with respect to,- a paper which is delivered with the understanding that it is to be perfected into a negotiable note. The same policy would seem to govern both transactions, and to require that the endorsers should, in each case, be subjected to the same liabilities, whatever they may be, that they would have incurred, respectively, had the drawing out and perfecting of the notes, in each case, immediately preceded the execution of the endorsements.
The questions whether such an endorsement should not be held to be without consideration, whether it was not void because of its preceding the making of the note, and because of there being no memorandum of the agreement in writing, were all considered in the case of Violett v. Patton, 5 Cranch’s R. 142, and decided in favour of the validity of the endorsement.
I do not therefore perceive, that the legal force of the endorsement in this case, is in any measure impaired by the consideration that it preceded, in order of time, the filling up of the note drawn upon the face of the paper. Nor do I discover any thing in the facts and circumstances *of the case agreed, which would justify us in so restricting the authority of- the payee, as to confine it to the drawing of a note, negotiable and payable at some one of our banks, over the signatures of the drawers, rather than the note now before us. The signature and the endorsement were both in blank at the time the paper passed into the hands of the payee, and the terms of the letter in which it was enclosed, “I have for you a blank note at eight months, which I wish you to fill up with as much as you can spare me,” &c., would be equally as well satisfied by filling up the blank with the note that was made, as with one negotiable at bank. We are therefore warranted in treating the case before us as if the perfecting of the note on the face of the paper, and the endorsing of it by Colston had been cotemporaneous acts, and had both preceded the delivery of the instrument to the payee.
What is the legal force of such an endorsement? No case is recollected in- which the precise question has been directly before this Court for its adjudication; but extensive reference has been made by counsel to cases settled in the Courts of some of our sister States, in which questions of a like character were the subjects of decision. The decisions of some of these States, are so much in conflict with those of others, and indeed, the decision of the Courts of the same State, have, in some instances, been found to fluctuate so much at different periods, that it is difficult to educe from their examination any well settled doctrine on the subject.
In Connecticut, the cases are numerous, and not without apparent conflict, but I think it may be stated as the result of the current of the later decisions of its Supreme court—-that endorsements in blank on promissory notes not negotiable, and on negotiable notes by one not a party to them, in order to warrant the maker’s responsibility, are treated as possessing the same *legal effect; and as binding the endorser to the undertaking that the money shall be obtained from the promiser when it falls due, by the endorsee, he using due diligence, and taking the remedies which the law has provided; but if the endorsee suffers it to lie without taking legal steps to secure or recover it, the endorser will be exonerated in case of a loss, unless the promissor was absolutely insolvent when the note fell due. Perkins v. Catlin, 11 Conn. R. 213; Lafflin v. Pomeroy, Id. 440; Castle v. Candee, 16 Conn. R. 223.
In Massachusetts, it is held, that where the note is made payable to the party sought to be charged, and negotiable in its form, the holder should be restricted to such an engagement over the signature endorsed in blank as will conform to the nature of the instrument. In such case, the party placing his signature in blank on the back of the note, is liable as endorser, and in no other form. But where the note was not payable to the defendant, or from its form was not negotiable by his endorsement, the nature and extent of his liability has been determined by the circumstances under which the endorsement has been made: if made after the note has been given, and under circumstances shewing that the endorser had no concern in the original contract, parol proof has been resorted to for the purpose of shewing what was the true character of this promise or engagement; and his undertaking has been treated either as a collateral or direct promise, according to such proof. If on the other hand, such endorsement is made at the same time with the execution of the note, the holder has been,,allowed to treat the endorser at his election, either as a direct or collateral promissor, without any proof of consideration, or of any actual promise to pay, except what is derived from his signature on the back of the note. Josselyn v. Ames, 3 Mass. R. 274; Hunt v. Adams, 5 Id. 358; Moies v. Bird, 11 Id. 436; Austin v. Boyd, 24 Pick. R. 64; Baker v. Briggs, 8 Pick. R. 122; Oxford Bank v. Haynes, Id. 423.
*In New York, the decisions upon the question have not been uniform, but the weight of authority is in favour of the proposition—that when the note is ne *81 gotiable, the inference to be drawn from a third party’s placing his name on the back of it, is that he intends to give credit to the maker, by becoming answerable as endorser ; and that where he can be made liable as endorser, he cannot be charged in any other character. If, however, by reason of the note not being negotiable, he is not chargeable as endorser, and he made the endorsement under an agreement, and with the intent to bind himself in some other form, the payee may write over the blank endorsement such a promise or guaranty as will carry into effect the intention of the parties. Nelson v. Dubois, 13 John. R. 175; Tillman v. Wheeler, 17 John. R. 326; Seabury v. Hungerford, 2 Hill’s R. 80; Prosser v. Duqueer, 4 Hill’s R. 420. The reasonable inference which one about to accept a promissory note filled up as the one before us, and endorsed in blank in the ordinary course of business transactions, would draw from a mere inspection of the instrument is, that the endorsement was made with the intent to give strength and credit to the paper. He would perceive that the person putting his name on the back of the paper, had not, from the nature of the instrument, subjected himself to the liabilities, or entitled himself to the privileges, which attach to the endorser of paper strictly commercial. And as, of the only other contracts, having reference to the note on the face of the paper, which could be fairly predicated of the blank signature on the back, viz: an absolute and direct promise to pay, or a collateral guaranty, it would be just as fair to presume the one as the other; it would, I think, be reasonable further to infer, that the person so endorsing in blank intended to leave it in the power of the payee to elect in which of the two aspects he would hold him bound.
*1 regard the weight of authorities above referred to, as in favour of these views; the decisions in Connecticut being opposed by those of New York and Massachusetts; and I do not think that there is any thing in the decision of this Court in the case of Watson v. Hurt, 6 Gratt. 633, in conflict with them. In the last mentioned case, the blank endorsement being construed in reference to the note on the face, and the latter being barred by the statute of limitations, it was not necessary to decide whether the endorsement imported an absolute suretyship for the maker, or a collateral undertaking for the payment of the note; as, whether the action was to be treated as founded on the one form of contract or the other, it would in either case have been barred by the statute.
I have hitherto considered the case as if the endorsement were still in blank, as it was when it passed into the hands of the payee. Since then, nothing has occurred to impair the right of the payee to treat the endorsement as still in blank. I do not deem it necessary, therefore, to express any opinion, as to what would have been the construction to be given to the terms of 'the writing over the signature of the endorser, had they been filled out before the paper passed to the payee, or upon the questions of diligence, which might have arisen had we regarded the undertaking of Colston as a collateral guaranty.
It was competent for the appellant, in my view of the case, as before stated, to have charged Colston either as a collateral promissor, or as a direct and absolute surety. The filling up of the endorsement has not destroyed the right of the appellant to hold the appellee bound to him in either character. It was made after the institution of the suit; and might have been erased or altered in any way, at or before the trial, so as to conform to any of the counts in which the plaintiff had a right, upon the state of facts, to recover. Tenny v. *Prince, 4 Pick. R. 385; Josselyn v. Ames, 3 Mass. R. 274. EJven then, if we were to hold that according to the terms of the endorsement as they now stand, Colston would be a collateral promissor, and as such, not bound because of the alleged want of proper diligence on the part of the payee against the maker, I do not think it would be necessary to send the case back for the formal erasure of the filling up of the endorsement, and its alteration so as to make Colston, by the express written terms of the endorsement, a direct promissor. No change in the declaration or other pleadings, in such a state of things being necessary to the recovery. I feel the less reluctance in coming to this conclusion, as from the facts agreed, it is highly probable that no measure of diligence would have resulted in procuring payment of the note from the makers. I think that there is error in the judgment of the Court below; that it ought to be reversed with costs, and one rendered in favour of the appellant for the amount of the note and its interest.
The other Judges concurred in the opinion of Judge Daniel.
Judgment reversed, and entered for the appellant.