Lee, J.
Waiving the question whether the provision in the Code, ch. 181, § 5, p. 681, authorizing amendments in judgments or decrees of a court in certain cases by the judge in vacation after the adjournment of the term, can apply to a case of felony, in which all the proceedings should regularly be had in presence of the accused, or to any criminal case, I am yet of opinion, that no such amendment of the record as that attempted to be made in this case, by *824 the action of the judge in vacation, on the 11th of May 1854, is within the scope of that provision. It intended to authorize amendments in support of a judgment, in cases in which there was something ™ ^ie recor<^ by which they could safely be made. It could not have been intended to authorize an amendment to be made upon the individual recollection of the judge, or upon proofs aliunde. Nor was the application in this case to amend the judgment, nor was it designed to aid the judgment when made. It was an application to introduce something into .the record as part thereof, not before found therein, depending on the recollection of the judge, or upon proofs to be submitted to him; and its object was to provide a means of reversing the judgment, not of ■sustaining it.
The construction given by the English courts to the statutes of amendment, required that there should be ■something to amend by. Tidd’s Prac. 246, 247; Commonwealth v. Winstons, 5 Rand. 546, opinion of Judge Green. And such is, I think, the plain meaning of the provision in question in our statute. And if no amendment can be made in the record of a judgment after the term, except under the statute, or in the few cases allowed by the common law, of which this is not one, the amendment attempted to be •made in this case must be disregarded'; and no objection to the indictment can now be considered, if the 'offence be charged therein with sufficient certainty for .judgment to be given thereon according to the very right of the case. Code, p. 770, § 12.
But it is urged that the omission of the averment “ to the prejudice of another’s right,” is a defect so material that it may be taken advantage of after verdict; and that <it -cannot be aided by what is found charged in the indictment. It is said that these terms import a part of the description of the offence de *825 nounced in the statute; and that according to well settled rules of pleading, they cannot be omitted. I think these words are not intended to be descriptive of the offence, but of the writings of which forgery may be committed. The first and third sections of the act specify various writings by name or general description, the forgery of which is made felony; and the fifth section makes the forgery of any writing, other than those mentioned in the first and third sections, “to the prejudice of another’s right,” in like manner felony: thus discriminating between those writings which might affect the rights of .others whereof forgery might be committed, and other writings by which, whether false or genuine, the pecuniary interests of others could not be affected. This discrimination has not been introduced, but only preserved, by the statute; being found to exist at the common law, which predicates the offence of forgery only of such writings as are to the prejudice of another’s right, or, as it is sometimes expressed, by which another may be defrauded. 3 Chitty Cr. L. 1021; 2 Russ, on Crimes 318. That these words “ to the prejudice of another’s right,” refer to the writings contemplated by the statute, and not >to the act of the party, is, I think, sufficiently established by Hendrick’s Case, 5 Leigh 707, and Murry’s Case, Ibid. 720; in neither of which did the indictment contain that particular expression, though it is found in the act of 1819 on which those prosecutions were founded.
But although the employment of these terms is not indispensable in an indictment under the fifth section, it must sufficiently appear, from the description given of the writing alleged to have been forged, that it was writing to the prejudice of another’s right. If it be not such, it is not within the statute, and the forgery *826 of it cannot be punished as felony. It is insisted, that the writing described in the indictment is not embraced by the statute. It is argued that to be such, the instrument must appear on its face to be valid and effectual to answer the purpose intended, and calculated by its appearance of genuineness to defraud; and that as the plaintiff was the maker of the note, and Eoach & McGuire the payees, the endorsement of the names of John & George Gibson, if genuine, could only- have been intended to bind them as second endorsers, ;and ’Created no liability on their part to Eoach & McGoire, the payees; and as parties must be held to know the law, that Eoach & McGuire were bound. to take notice of this, and so could not be defrauded.
If this proposition be correct as stated, it might perhaps be a sufficient answer to it to say that where a third party puts his name on the back of a negotiable note made by a first to a second party as payee, while still in the hands of the maker, it may be inferred from the fact of his so doing, that he intended to give the maker credit; and this inference is not to be repelled, because his liability as endorser cannot be made operative in favor -of a subsequent holder, without first obtaining the name of the payee to the paper: and if the payee, aftei’ taking the note, were to endorse his name upon it and put it in circulation, a subsequent holder for value, who should take it on faith of the genuineness of the names so endorsed, would then be defrauded. And the general intent to defraud charged in the indictment, would' apply to a subsequent holder who might thus be defrauded, as well as to Eoach & McGuire; for a party who under such circumstances forges the name of an endorser upon a note made by himself, payable to another, and passes it to the payee for value, may pro *827 perly be held to have intended to defraud any one who might be defrauded in consequence of his act.
But Í do not concur in the proposition as stated by the counsel. It does not follow because a party stands in the position of first endorser upon a note, that he can never hold a second or subsequent endorser responsible to him. The circumstances may be such that he may well recover against a subsequent endorser. This is conceded by Judge Spencer in Herrick v. Carman, 12 John. R. 159, cited by the counsel, and impliedly admitted by Lord Kenyon in Bishop v. Hayward, 4 T. R. 470.
The cases which have been decided in the courts of this country, involving the liability of an endorser in blank of a note to which he is no party, are numerous, and perhaps not without serious conflict. Where the note is not negotiable, they would seem to maintain, with little diversity, that such an endorsement in blank, made at the time of the note, will make the endorser liable as an original promiser or maker of the note; and the payee may write a promise to pay the amount of the note, expressing it to be for value received, over the blank signature. Josselyn v. Ames, 3 Mass. R. 274; Moies v. Bird, 11 Mass. R. 436; Doan v. Hall, 17 Wend. R. 214; Nelson v. Dubois, 13 John. R. 175; Herrick v. Carman, 12 John. R. 159; Campbell v. Butler, 14 John. R. 349; Hall v. Newcomb, 3 Hill’s N. Y. R. 233; Sylvester v. Downer, 20 Verm. R. 355. Where the note is a negotiable instrument, however, a distinction has been taken in some of the cases; and it has been held that a party endorsing a note in blank to which he is no party, cannot be treated either as an original maker or as a guarantor, but in the absence of controlling proofs to the contrary, must be regarded as having intended to bind himself only as a second endorser. Herrick v. Car *828 man, 12 John. R. 159; Seabury v. Hungerford, 2 Hill’s N. Y. R. 80; Hough v. Gray, 19 Wend. R. 202; Spies Gilmore, 1 Comst. R. 321.
j think, however, the authority of the cases maintaining this distinction, is overweighed by that of those in which it has been disregarded, and which treat the liability of an endorser in blank of a negotiable note to which he is no party, as the same as that of an endorser under similar circumstances, of a note not negotiable. Baker v. Briggs, 8 Pick. R. 122; Ulen v. Kittredge, 7 Mass. R. 233; Moies v. Bird, 11 Mass. R. 436; Austin v. Boyd, 24 Pick. R. 64; Tenney v. Prince, 4 Pick. R. 385; Sylvester v. Downer, 20 Verm. R. 355; Martin v. Boyd, 11 N. Hamp. R. 385; Beckwith v. Angell, 6 Conn. R. 315; McGuire v. Bosworth, 1 Louisian. R. 248. Prom these and other cases to the same effect, I deduce that if a third party put his name in blank upon the back of a negotiable promissory note made payable to another party, and to which he is a stranger, while the same remains in the hands of the maker, he will be presumed, in the absence of controlling proof to the contrary, to have intended to give the note credit and currency; and if the endorsement was at the time of the making of the note, he may be treated by the payee as an original promiser or joint maker of the note. If the endorsement were after the date of the note, however long, the payee may treat him as a guarantor, and may write over the signature a guaranty consistent with the nature of the case. And the fair and reasonable, if not necessary inference from cases which have occurred in this court, will- bring us to the same result. See Douglass v. Scott, 8 Leigh 43; Watson v. Hurt, 6 Gratt. 633; Orrick v. Colston, 7 Gratt. 189.
Thus then, when the plaintiff produced the note to Eoach & McGuire, with the names of John & George *829 Gibson endorsed, Roach & McGuire had a right to presume that it had been endorsed by the Gibsons for the purpose of giving it credit and currency, and that if they took it, they would be entitled to treat the Gibsons as responsible to them, whether as original makers or as guarantors, is immaterial; for we are not at all concerned here with the enquiry what would be the nature of the liability of the Gibsons to Roach & McGuire, if the endorsement had been genuine, the effect being the same, either way, for the purposes of this case; and if the endorsement were forged, the very fraud would be committed which it was the design of the statute to punish as a felony.
Nor is the view which I have taken unsupported by authority in criminal jurisprudence. Wicks’ Case, Russ. & Ry. Cr. Cas. Res. p. 149, is strongly in point. There the prisoner having in his possession what purported to be a bill of exchange for fifty pounds, drawn by Rimmington & Co. payable to their own order, but not endorsed in their name, offered the same for discount at the banking house of Stephens, and the same was discounted, and the proceeds, less the discount, paid over to him. At the time of the discount of the bill he endorsed it, but not in his own name. It was urged that as there was no endorsement by the payees, the instrument was not valid as a negotiable bill of exchange, and could not be available in the hands of the party to whom it was uttered, even if it were a genuine bill. The argument, however, did not prevail, and the prisoner was convicted. And the case having been reserved, at a meeting of the judges, all who were present, being nine in number, agreed that the conviction was right. In Winterhottom’s Case, 1 Denison 41, 5 British Cr. Cas. Res. 42, the prisoner was indicted on stat. 11 Geo. iv, and 1 Wm. iv, for the forgery of an endorsement on a bill of exchange. The bill was pavable to four persons named, who were *830 styled executrixes of one John Isherwood deceased. The forgery charged was of the name of one of those persons. The prisoner was convicted, but the case •was reserved. At the hearing before the Court for crown cases reserved, it was urged that the endorsement being of one of the payees only, would not be valid even if genuine; for it would not transfer the property in the bill, and so could not defraud. The court, however, after taking time to consider, held the conviction right.
The only plausible objection to the views above presented,’ is one suggested by the language of the indictment. The writing is described as purporting to be the “ endorsement” of John & George Gibson; and it may be said, that as the simulated liability of the Gibsons was thus that of “ endorsers,” we are not at liberty to give effect to the allegation, by resorting to a liability of a different character, which would result from their names being found upon the note if the signatures were genuine. I think, however, the objection would be more specious than sound. There is no reason for restricting the term “ endorsement” to the technical sense applied to it in the lex mercatoria. The primitive and popular sense of something written on the outside or back of a paper on the opposite side of which something else had been previously written, should be given to the word whenever the context shows it to be proper, or it is necessary to give effect to the pleading or other instrument in which it may occur. And such is the sense in which it should bo understood in this indictment; for the technical sense would not give effect to the simulated liability on the part of the Gibsons which it must be intended, was designed to be averred. Upon this point also, Winter-bottom’s Case, above referred to, may be cited as strongly favoring this mode of construction.
The motion for a new trial upon the facts proved in *831 the case, involves no other question than that which I have attempted to discuss on the objection to the indictment. What I have already said, therefore, renders a separate consideration of this motion unne-. cessary.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Lee , J.
Judgment affirmed.