RIVES, J.
The appellants John E. Eant and William E. Phillips, in June, 1850, gave four blank notes with their signatures to E- E- Eant, a merchant of Baltimore, who was son of the first and the nephew of the second. This accommodation was in compliance with E. E. Eant’s letter to his father of 7th June, 1850, which, under the decision of the Court of Appeals of 24th May, 1858, was given in evidence to the jury at the late trial of this cause, and constitutes a part of the record now under review. It is not included in the judge’s certificate of facts proved at the trial; but is embodied in the second bill of exceptions, ■to which, I think, resort can now be had for this substantive fact, without contradicting the authority of Brooke v. Young, 3 Rand. 106, as qualified by Perkins’ adm’r v. Hawkins’ adm’x, 9 Gratt. 649. It would seem from this letter that E. E. Eant had suspended his business, but determined to resume it in consequence of facilities offered him by the appellees Miller & Mayhew. He does not withhold the fact that the appellees were to make the advances of money to him; but he represents them as wishing to “borrow these four blank notes to raise money' upon” as a loan to themselves, they being adequately secured by “collaterals to the amount of over sixty thousand dollars.” It would *be idle to inquire whether this representation was correct or not, and how far it influenced the conduct of the appellants in this transaction. It is sufficient that the appellants were allowed in the recent trial of this cause the full benefit of every plea for relief, grounded on this letter, and growing out of alleged imposition or failure of consideration. Signal ingenuity has been dis *257 played by their counsel in so framing the pleadings and inviting the rulings of the judge on the trial as to meet every conceivable phase of such a defence. Five different pleas were allowed, setting forth, in varying form, the accommodation and loan sought by the plaintiffs; the want of consideration as between them and the defendants ; the fraudulent abuse of a uthority; the alleged undertaking of plaintiffs to pay the notes at maturity; their knowledge of the failing circumstances of J$. L. Fant; of his want of authority from the drawers to use their notes for his own advantage, and of plaintiffs’ consequent fraud in procuring such use without due inquiry of him, &c., &c. Corresponding instructions were sought and given from the bench, extending to the defendants below every possible advantage they could derive from the letter of 7th June, 18S0, the exclusion of which was among the errors corrected by the Court of Appeals in 1858. Nevertheless, jjroofs were wanting to sustain this skillful de-fence; the jury rendered its verdict, and the court its judgment against it.
It seems to me there was no error in this, either in reason or law. Men must abide the proper consequences of their acts. They cannot shelter themselves under the plea of ignorance, or of being misled. The appellants well knew they were lending their credit to an embarrassed relative, whose necessities might betray his veracity, and whose hopes might prevail over his fidelity to his friends. They were also informed by whom the *advances were to be made to re-establish the son and nephew in business. To give him, then, the benefit of their names to blank commercial paper was, upon every principle of fairness and reason, full authority to raise money by it of the appellees or others; and if they desired to protect themselves from such liability, it was emphatically their business to refrain from the act, or else accompany it by x>atent restrictions. They should have imposed some express limitation upon the power of the payee, or else, they were guilty of a fraud upon the commercial public by any evasion of this liability. How easily, in this case, could the wrong have been avoided by notice to the intended and known endorsees of these blank notes! That none such was given would render this making in blank a clear fraud by the makers upon the endorsees of these notes, provided the makers could now defend themselves by such a plea. Let it be conceded that the appellants and appellees were equally innocent in this transaction ; but one or the other must now suffer by the wrong of F. Iv. Rant: who shall it be? Surely the party that enabled him to do the wrong.
These obvious dictates of reason are fully sustained at law. The parties to every accommodation note hold themselves out to the world, by their signatures, to be absolutely bound to every person who shall take the same for value to the same extent as if that value were personally advanced to them, or on their account, and at their request. Story on Prom. Notes, $ 191 to 197; Smith’s Mer. haw, H. & G. ed., 261 to 263, and citations in notes. In the case of Russel v. Langstaffe, Dougl. R. 513, Ld. Mansfield speaks of an endorsement on a blank note as ‘ ‘in the nature of a letter of credit for an indefinite sum.” Public policy upholds and facilitates the negotiability of such notes, and promotes their circulation for the ends of trade. Hence it is held, that a bona *'fide holder for value, without notice, is entitled to recover upon any negotiable instrument which he has received before its maturity, notwithstanding any defect or infirmity in the title of the person from whom he derived it, although such person may have acquired it by fraud, or by theft, or robbery, except where, by legislative enactment, the instrument is made absolutely void in the hands of every holder, as by the statutes against gaming and usury. Saltmarsh v. Tuthill, 13 Alab. R. 390. The possession of a negotiable instrument is prima facie evidence that the holder took it for value, and that he came to it honestly. Wilson v. Lazier, 11 Gratt. 477. The evidence in this cause does not disclose to my mind any such proof or suspicion of fraud in the procurement of the notes by the payee as to impose upon the holder the onus of proving his bona fides, or his payment of value for it, under the authority of the cases, cited by appellants’ counsel, of Vathir v. Zane, 6 Gratt. 246, and Wilson v. Lazier, 11 Gratt. 477. But even if the burden of proof was so shifted, it sufficiently appears that the ap-pellees took the notes in question in the regular course of business, and for value, and without knowledge of any fraud in the procurement of them by the payee. There is, therefore, no error, as it appears to me, in the court’s refusal to award the appellants a new trial upon the general principles of law that define the rights and obligations of the parties to this contract.
Two special errors are further assigned : First, that the demurrer to the 6th plea was sustained, and that afterwards said demurrer was allowed to be withdrawn, and the said plea was, on plaintiffs’ motion, stricken out of the pleadings in the cause; and secondly, that the court did not exclude said notes from going in evidence to the jury because unstamped, and therefore void under the stamp act of Maryland. The plea, which was disallowed, *set up the general defence of usury, and the additional defence that the plaintiffs were not bona fide holders of said notes for value. Besides, a plea of usury under the law of this state had been previously filed.
Before considering these points, it is necessary to determine whether this be a Virginia or a Maryland contract; if the former, the defence of usury was already made, and no stamp was necessary; i f the latter, the plea should conform to the Maryland law, and it should be determined whether the stamp act of Maryland is to be enforced by our courts. The general rule is, that all *258 instruments take effect and are to be construed as to their nature, operation and extent, according to the law of the country where they are made and executed. Locus regit actum. Story’s Confl. of Laws, 286 d. A note made in'a particular country is to be deemed a note governed by the laws of that country, whether payable there or generally without naming any particular place. Wilson v. Lazier, 11 Gratt. 477. These principles are predicated of the intentions of the parties, who are naturally and reasonably supposed to contemplate in the transaction the lex loci contractus. Here the appellants, in sending their signatures to Baltimore, did so with the intention that the blanks should be filled and used there. They were “incipient bills,” as termed by Le Blanc, J., in the case, already cited, of Russel v. Langstaffe; and when perfected by the payee, and made payable in Baltimore, they must be-taken as subject to the law of Marjdand by the combined operation of the acts and intentions of the parties. Maryland fulfills the twofold designation of the “Locus, ubi con-tractus celebratus est; locus, ubi destinata solutio est. ’ ’ I therefore feel no hesitation in pronouncing this a Maryland contract. If such, the appellants -were properly disallowed *a general plea of usury, and could only plead the law of the jurisdiction governing the contract. In such case, they would have had to set forth the principal and interest actually due, and to ask relief to the extent of the usurious excess. They did not do this; and therefore the demurrer was properly sustained. Tor some reason that does not appear, the parties were not content with this position of the pleadings, which seems to me satisfactory; but, at a subsequent day, this order was, on plaintiffs’ motion, rescinded; whereupon the defendants withdrew their joinder in demurrer, and the plaintiffs their demurrer to said plea; and the court then, on plaintiffs’ motion, ordered the said plea to be stricken out. The plaintiffs did not gain, nor did the defendants lose anything by it. I should infer it was taken with the consent of the defendants, because of the withdrawal of their joinder in demurrer. But however that may be, or whatever irregularity may exist in this proceeding, it now presents no matter for correction by this court. The reasoning by which I thus justify the disallowance of this plea applies to and sustains the judgment of the court in refusing to give the seventh, eighth and ninth instructions asked for by the appellants in the trial below.
The only remaining question to be considered on this record, is one of some novelty and conflict of authorities. Did the court err in disregarding and refusing to enforce the stamp act of Maryland, it being conceded that that act made these notes void for want of a stamp? Although this question arose on the motion of defendants to exclude these notes from going in evidence to the jury, because unstamped, it would be too technical to deem it restricted to a question of evidence; but I assume it as involving the general question of validity, and as if it had arisen upon a motion to instruct the jury that they were void and could not be recovered upon, because of the want of *a stamp. A discrimination of this sort is made by Justice Story, who, after a broad and positive statement that “if by the laws of a country a contract is void, unless it is written on stamped paper, it ought to be held void everywhere; for unless it be good there, it can have no obligation in any other country,” nevertheless admits, “it might be different if the objection were not to the validity of the contract, but merely to the admissibility of other proof of the contract.” Story’s Confl. L., § 260 ( 4). In the case of James v. Catherwood, 16 Eng. C. L. R. 165, receipts required by the laws of France to be stamped, were allowed as evidence without such stamps. It was said by Abbott, J.: “In the time of Lord Hard-wicke, it became a maxim that the courts of this country will not take notice of the revenue laws of' a foreign country. There is a reciprocity between nations in this respect. Foreign states do not take any notice of our stamp laws, and why should we be so courteous when they do not give effect to ours.” He adds, “it would be productive of prodigious inconvenience, if in every case in which an instrument was executed in a foreign country We were to receive in evidence what the law of that country was, in order to ascertain whether the instrument was or was not valid.” Our special Court of Appeals in the case of Lambert v. Jones, took the same view of this question, and received as evidence an unstamped instrument, not admissible by the lex loci contractus.
As a question, therefore, of the admissibility of evidence, it seems well settled, that the fiscal laws of another state prescribing the stamping of papers, are not to prevail in our courts. But where the legal effect or obligation of the paper is in issue, a different rule has been laid down in some cases. A leading one is that of Alves v. Hodgson, 7 T. R. 241. Hodgson gave a promissory note at Jamaica to Alves as a seaman, for his wages; but *the note was not stamped as required by the laws of that island. Held, that the plaintiff could not recover on a written contract made in Jamaica, which by its laws was void for want of a stamp. Ld. Kenyon, Ch. J., said: 1 ‘This is a promissory note, though not negotiable; and as it is not stamped, it cannot be received in evidence. Then, it is said, we cannot take notice of the revenue laws of a foreign country; but I think we must resort to the laws of the country in which the note was made, and unless it is good there, it is not obligatory in a court of law here. ’ ’ To the same effect’ is the case of Bristow v. Sequeville, 5 Exch. R. 275, where it was admitted that a foreign court might disregard the statutory fiscal enactments of the country of the contract on a question of evidence ; *259 but it was .further decided that where the instrument was void for want of a stamp, it will be so deemed by the foreign court.
Amid this contrariety of authorities, I gladly accept a limitation or qualification of this doctrine, laid down by Judge Story in 1 Gallison 374. It seems to me eminently judicious, and as affording the means of reconciling to some extent these opposing decisions. While affirming J ‘ that the lex loci is to govern all questions as to the nature, validity and construction of contracts, and is to be enforced everywhere,” this able judge excepts “cases in which the contract is immoral or unjust, or in which the enforcing it in a state will be injurious to the rights, the interest or the convenience of such state or its citizens.” There are two cases cited in the argument of this cause, one from Illinois and the other from Massachusetts, that strikingly illustrate and exemplify the reasonableness a nd necessity of this exception. The first is the case of Sherman et al. v. Gasset et al., 4 Gilman’s R. 521. This was a suit, to foreclose the mortgage of lands in Illinois, given to secure a debt “'contracted in Massachusetts at ten per cent, interest, while twelve per cent, was legal in Illinois; but the law of Massachusetts gave only six per cent, and specially provided that, “whenever an action shall be brought upon any contract or assurance, and it shall appear upon special plea to that effect, that a greater rate of interest has been directly or indirectly reserved, taken or received, the plaintiff shall forfeit three-fold the amount reserved or taken, and shall have judgment for the balance only, which shall remain due after deducting said three-fold amount.” The question, then, was whether the Illinois court would execute these penal provisions of the Massachusetts law; and it was held that it would not, and declared to be ‘ ‘a settled rule of jurisprudence that the courts of one country will not enforce either the criminal or penal laws of another. The second case is McFaden, &c. v. Burns, &c., 5 Gray’s R. 599, where the chief justice ruled that though it was a Missouri contract, the law of Missouri did not apply to this action and could not be enforced therein. That law fixed the rate of interest at six per cent., and provided “that in any action on a contract made within that state, in which it should be found that more than that rate was agreed for or taken, the court should give judgment for the principal sum due, after deducting the amount of unlawful interest taken or agreed for; and also judgment for interest at the rate of six per cent, on the balance; and order the whole amount of interest to be set apart for the use of the common schools of the country in which the action was brought, and when collected, to form part of the common school fund for the county, and that the defendant should recover his costs.”
It is manifest, how‘inconvenient,’ if not impracticable, it would have been for the Massachusetts court in this case to administer the Missouri law, so peculiarly local in *its provisions and policy. Where the principle of the lex loci is the offspring of a mere domestic policy, and does not pretend to the sanctions of common morality and general jurisprudence, it may be safely assumed as without the pale of that international comity, upon which this doctrine partly rests, and as coming within the exception of cases, in which it would be “injurious to the rights, interests and convenience of a foreign state or its citizens” to respect and enforce it. Whether it would be different where the foreign law was of universal application, and in complete harmony with the lex fori, I need not now decide; it is sufficient that I see no reason and recognize no authority requiring a Virginia court, while bound by no stamp acts of this state to observe and enforce the penalties of the stamp act of Maryland; but I do discern many ways in which such course would be injurious to the rights, the interest or convenience of this state or its citizens;” and I therefore claim the benefit of the exception, so well and fitly made by Judge Story. If Massachusetts may not and cannot enforce the peculiar local provisions of the Missouri usury law; if Illinois, in like manner, disregard the penalties and forfeitures of a similar statute of Massachusetts, why should our courts volunteer to guard and protect the treasury of Maryland by enforcing her revenue laws? Bet it even be conceded that the lex loci should prevail here and elsewhere, where it embraces and effectuates general principles, known to and accepted by the jurisprudence of enlightened nations; but cases, like the present, involving no universal interest, but such only as pertain to a state in its revenue service, must be deemed as within the exception of inconvenience or injury,” authorizing the court exercising jurisdiction to decline enforcing the general doctrine.
In the view, therefore, which I have taken of this question, it is immaterial how the stamp act of Maryland ‘‘'may be construed, whether as making the unstamped instrument absolutely void, or as subjecting it to transient disabilities without destroying the original vitality of the contract. I need not, therefore, enter into the disquisition seeking to establish a difference between the terms “invalid and unavailable for any purpose,” on the one hand, and the epithet “void” on the other. I regard them as tantamount, and presume this discrimination rests, not on this difference of phraseology, but rather on the nature of the proviso, which restores the instrument to validity upon certain prescribed conditions, so that the advocates of this distinction would not vary their construction of the act though the latter epithet had been , used. The ‘invalidity’ of the instrument is to be deemed a penalty, denounced against j the violation of the law, just as much as | if a pecuniary mulct or forfeiture had stood ; in its stead. There can be no question, if ¡ this cause was now before a Maryland court, : no recovery would be allowed on these notes, *260 because they have never been stamped, in conformity with the requirements of the proviso; and if this court does not follow the same course, it is due to its refusal to execute a revenue law of Maryland. Whether such refusal can be better justified, where the law appoints a mode of relief against the penalty- of‘invalidity’ than where there is no escape from it, I have no occasion to inquire or decide. My opinion rests on the broad ground, that whatever may be the character of the revenue laws of another state, no matter what penalties it affixes, whether it declares a contract void or invalid, or provides relief from its penalties, the courts of this state are not bound by authority or reason to regard or enforce such laws.
It has been argued, that though the contract in this case be admitted to be a Maryland contract, yet our courts, when called on to execute it, should administer *the lex fori. For this position, the appellants’ counsel have relied on the case of Turpin v. Povall et als., 8 Leigh 93. That case, however, was decided on the principle of its being a Virginia contract ; the loan was made by an agent, the bond given and the mortgage executed in Richmond; and hence it was held a Virginia contract. But though this was decisive of the case, .the. president of the court proceeded further, in the delivery of his opinion, and argued the hypothesis of its being a Pennsylvania contract; and in doing so, as it seems to me, gaye the weight of his opinion to the position taken by the appellants’ counsel. But this was plainly extrajudicial; and it is compatible with the highest respect (and such I certainly entertain) for the opinions of this distinguished judge, to suppose that he did not express himself with the care and precision he would have done had this point entered into the decision of the cause. Whatever doubts I entertain of the assertions and reasoning of this able judge on this hypothesis, I am not called upon to state them here, inasmuch as these observations were incidental, and not required by any necessity of the decision he was pronouncing.
I have thus briefly reviewed all the points presented by this record, and am of opinion that the judgment of the court below should be affirmed.
JOYNFS, J.
After this cause went back from this court in 1858, the defendants filed six special pleas. To the first five pleas the plaintiffs replied, and issues were joined upon them. No question arises in respect to these pleas. To the sixth plea the plaintiffs demurred; and, on the 16th of September, 1859, the court sustained the demurrer. On the 19th of the same month, on motion of the plaintiffs, the order entered on the 16th was rescinded; the defendants, by leave of the court, withdrew *their joinder in the demurrer, and the plaintiffs thereupon withdrew their demurrer; and, then, on motion of the plaintiffs, the plea was struck out by the court. The plaintiffs in error assign as grounds of error1. That the demurrer was sustained. 2. That the order sustaining the demurrer was rescinded, and the plea struck out.
I do not understand this plea as designed to set up the defence of usury. The plea of usury had been filed in 1855. If it was designed to set out the defence of usury-under the law of Maryland, upon the view that the general plea of usury allowed by the statute would not cover that defence, it was defective in not stating what the law of Maryland was. 1 Chitty Plead. 247. If the plea was bad, the striking it out cannot be assigned as error.
I think the object of the plea was to set up the defence that the plaintiffs were not bona fide holders of the note on which the action was founded. That defence, however, might have been made, as, in point of fact, it was made, under the plea of nil debet, upon which issue had already been joined in 1853. The plea was, therefore, wholly unnecessary, and this would have been good ground for rejecting it when offered, if it had been objected to; Reed v. Hanna’s ex’ors, 3 Rand. 56; and it was competent forjthe court to strike it out after it was raised, even though issue had been joined upon it. Kemp v. Mundell, 9 Leigh 12. The plaintiffs in error not having been deprived of any defence by the striking out of this plea, have not been injured by it, and cannot complain. The multiplication of issues by special pleas tends to embarrass the jury, and ought not to be encouraged, “except in cases where by law the defence would otherwise be excluded or rendered unavailing.”
After the plaintiffs had given the note in evidence to *the jury, the defendant moved to exclude it, because it had not been stamped in pursuance of the law of Maryland; and offered to read in evidence to the jury a paper containing the statutes of Maryland on the subject of stamps, which were in force at the date of the note. The plaintiffs objected to the introduction of this evidence, and the court sustained the objection; being of opinion that the note might be used in evidence in this state, notwithstanding the provisions of the Maryland statutes.
Authorities are divided upon the question whether the construction and effect of the law of a foreign state are to be determined by the jury or by the court. 1 Rob. Pract. (new ed.) 257, 259. But it is not necessary to decide that question in this case. For even if it was the duty of the court to admit the evidence, and to leave it to the jury to decide from it what the law of Maryland was, this court will not reverse the judgment, if upon consideration of the statutes which were offered in evidence, it shall appear that the construction adopted by the court was correct. For in that case it would appear that the rejection of the evidence did the defendants no injury, because the verdict of the jury would have been set aside, if the evidence had been admitted, and the jury had put. a different construc *261 tion on the statutes from that adopted by the court. Crease v. Barrett, 1 Cromp. Mees, and Ros. 919; Doe v. Langfield, 16 Mees. and Welsb. 497; Thorndike v. Boston, 1 Met. R. 242; Preston v. Harvey, 2 Hen. & Man. 55.
The question, therefore, is, whether the fact that this note had not been stamped according to the law of Maryland, was a bar to a recovery upon it in the courts of Virginia.
In Alves v. Hodgson, 7 T. R. 241, which was an action on a contract made in Jamaica, the court considered that the contract was void in Jamaica for want of a stamp; *and on that ground held it void in England. Bord Kenyon said: ! ‘Then it is said that we cannot take notice of the revenue laws of a foreign country; but I think we must resort to the laws of the country in -which the note was made, and unless it is good there, it is not obligatory in a court of law here. Clegg v. Levy, 3 Camp. R. 166, also proceeded on the ground that the agreement was void where it was made; and Bord Ellenborough expressed the opinion that if so it was void the world over.
The next case was James v. Catherwood, 3 Dowl. & Ryl. 199 (16 Eng. C. L. R. 165), in which to prove a loan of money in France, unstamped receipts were offered in evidence. The defendant’s counsel objected to the admission of the receipts as evidence, and offered to prove that by the laws of France such receipts required stamps. The court excluded the evidence, and the Court of King’s Bench refused a rule on the ground that one country will not take notice of the revenue laws of another. This disposed of the case; but the report makes the chief justice say, “it would be of prodigious inconvenience if in every case in which an instrument was executed in a foreign country, we were to receive in evidence what the law of that country was, in order to ascertain whether the instrument was or was not valid.”
How in this case it did not appear, and was not alleged, that the instrument was void under the law of France for want of a stamp. The case was not, therefore, put on the same groufid as Alves v. Hodgson and Clegg v. Levy. The remarks attributed to the chief justice, above quoted, would certainly not have been sound if they had asserted, as a general proposition, what the language taken literally seems to intimate, to wit: that the courts of England will enforce a contract made in a foreign country, without reference to the question whether it is valid or void in that country. And in that sense the remark would have *had no just relation to the case: for there was nothing to show that receipts were void in France for want of stamps. I think the only fair interpretation of the case is, that the defendant did not offer to prove that the law of France made the unstamped instrument void. In this view the case is not in conflict with those above cited. Wynne v. Jackson, 2 Russ. R. 351, 3 Cond. Eng. Ch. R. 144, turned also on the law of France. It did not appear and was not alleged, that the bills were void by the law of France, It appeared that the bills wrere stamped, but that they were drawn in such a form that the holder could not recover upon them in France. What the defect was does not appear ; it does appear that it was not the want of stamps. All the vice chancellor decided on this point was, that the “circumstance of the bills being drawn in such a form, that the holder could not recover on them in France, was no objection to his recovering on them in an English court.”
I see nothing in James v. Catherwood and Wynne v. Jackson inconsistent with Alves v. Hodgson and Clegg v. Levy. The last two relate to cases in which the foreign law makes the contract void for want of a stamp; the first two relate to cases where, by the foreign law, the instrument is not void, but cannot be used in evidence, or made the foundation of a suit, for want of a stamp or other formality.
The distinction between the two classes of cases is clearly pointed out in Bristow v. Sequeville, 5 Exch. R. 275. It appeared in that case that the receipts would not be admissible in the courts of Cologne for want of a stamp; and it was objected that they were, for that reason, not admissible in England. The objection was overruled, and the Court of Exchequer sustained the decision. Alderson, B., said: “It is very different whether the law makes a stamp necessary to the validity of an instrument, *or to its admissibility in evidence. An unstamped deed is a valid contract here, although it cannot be given in evidence. If, by the law of a foreign country, a document is only inadmissible for want of a stamp, it is a valid contract, and admissible in evidence in another country.” Pollock, C. B., following immediately upon these remarks of Alderson, B., said that James v. Catherwood was an authority in point. He had previously said, immediately before the remarks of Aider-son, B., that Alves v. Hodgson proceeded on the ground “that if it be not a contract at the place where it is alleged to be made, it is no contract at all.” Rolfe, B. (the present Bord Cran-worth), said, of Alves v. Hodgson, that the marginal note, “the plaintiff cannot recover upon a written contract made in Jamaica which, by the law of that island, was void for want of a stamp,” was perfectly correct. He added: “I agree that if, for -want of a stamp, a contract made in a foreign country is void, it cannot be enforced here. But if that case meant to decide that where a stamp is required by the revenue laws of a foreign state before a document can be received in evidence there, it is inadmissible in this country, I entirely disagree.”
This case throws light upon James v. Catherwood and Wynne v. Jackson, for the Code Napoleon, which is the law of France, was the law' involved in this case. It thus appears that, by the law of France, which *262 was involved in James v. Catherwood, and in Wynne v. Jackson, the unstamped instrument was not void, but was only not available as evidence.
I have made this examination of the English cases because I have not seen them discussed anj- where in a manner satisfactory to my mind. It seems to me, with deference, that it is a mistake to suppose that there is any inconsistency in these cases.
*In Ludlow & al. v. Van Renselaer, 1 John. R. 95, the action was on an unstamped note made in France; and it appeared that, without a stamp, “no note could be recovered in that country.” The court held that the action could be maintained, on the ground that they did not sit to enforce the revenue laws of other countries. In Lambert v. Jones, 2 Pat. & Heath 144, a recovery was had on an endorsement made in Maryland, which required a stamp; and the court put its decision on the ground that one country will not take notice of the revenue laws of another. And Judge Story, while he maintains that a contract, void for want of a stamp where it is made, ought to be held void everywhere, appears to concede that where such is not the effect of the lex loci, a recovery may be had in the foreign court. Confl. Laws, sec. 260, note.
■ In Satterthwaite v. Doughty, Busbee’s Raw R. 314, the Supreme court of North Carolina maintained the doctrine that an instrument void where made for want of a stamp, is void everywhere, and applied it to the case of an unstamped bond made in Maryland. The court assumed, without any examination of the Maryland statute, that the unstamped instrument was declared void by it. I cannot concur in that opinion ; and I think an attentive consideration of the subject will show that the true construction of the Maryland statute is, that it does not make the instrument void for want of a stamp, but only prevents its being used as evidence.
The provision of the statute of Maryland, applicable to this case, is as follows:
“And be it enacted, that no instrument of writing whatsoever, charged by this act with the payment of a duty as aforesaid, shall be pleaded or given in evidence in any court of this state, or admitted in any such court to' be available at law or in equity, or shall be valid *or available for any purpose whatsoever, unless the same shall be stamped or marked as aforesaid: provided, that if any such instrument of writing shall have been written or printed upon vellum, parchment, paper or other material, not marked or stamped according to this act, or upon vellum, parchment, paper or other material marked or stamped at a lower duty than ought to be paid upon the same, then and in that case it shall be lawful for the persons holding such instrument to make oath,” &c.,. and “to pay to the clerk,”.&c., “the duty chargeable by law on such instrument or writing, together with ten dollars in addition thereto,” * * * “after which,” &c., “such instrument or writing shall be, to all intents and purposes, as valid and available as if the same had been or were stamped or marked as by this act required. ”
The provisions of this statute are substantially the same as those of the English statutes. The act 9 and 10, William III, provides, that an instrument which has not been duly stamped, may have the stamp affixed afterwards, upon payment of the duty and a penalty of £10; and declares, that “no such instrument shall be pleaded or given in evidence in any court, or admitted in any court to be good or available in law or equity, ’ ’ until payment of the duty and^penalty. By the act 31 George III, it is provided, that no instrument liable to the duty imposed by that act “shall be pleaded or given in evidence in any court, or admitted in any court to be good, useful or available in law or equity,” unless duly stamped. This provision is incorporated in all the subsequent stamp acts. The act 31 George III, contained no provision for subsequent stamping on payment of a penalty, but such a provision was made by the act 37 George III, and has been retained in subsequent acts.
In Rex v. Bishop of Chester, 1 Stra. R. 624, the court said, that ‘ ‘ the stamp act was never intended to avoid "Meeds that were not stamped, but only to add a penalty to enforce the duty. ”
In Hawkeswood’s case, 2 East P. C. 955, the prisoner was convicted of the forgery of an unstamped bill of exchange. The judges, in sustaining the conviction, . said, “the stamp act, in saying that a bill without a stamp, shall not be pleaded or given in evidence, or be available in law or equity, means only that it shall not be made use of to recover the debt; and, besides, the holder might get it stamped after it was made.”
Scott & al. v. Jones, 4 Taunt. R. 865, was an action of trover for an unstamped instrument. The court said: “This instrument is a thing capable of having a value given to it by being stamped. The meaning of the act is, that it shall not, without a stamp, be available as between the parties, so as to enable them to enforce the agreement. ”
Regina v. Watts, 24 Eng. L. & Eq. R. 573, was an indictment for stealing a piece of paper upon which was written an agreement requiring a stamp, but on which there was no stamp. It was objected at the trial, that the paper contained a subsisting valid agreement, and therefore. was not the subject of larceny as a piece of paper only. The court of criminal appeal, eleven judges being present, and only one dissenting, held that the paper, though unstamped, was an agreement, though it could not be used as evidence of the rights of the parties without being stamped. Rord Campbell said, that the distinction was between instruments which, being unstamped, are wholly void, and those which may be made available by having a stamp subsequently impressed. Coleridge, J., said: “The only *263 object of the stamp laws is to enforce the duty by making' a document not available in evidence without a stamp.'’ In Delay v. Alcock, 29 Eng. L. & Eq. R. 83, the county court judge had treated *an unstamped agreement as a nullity ; but the Court of Queen’s Bench, on the authority of Regina v. Watts, held it to be error so to treat it, on the ground that “the potentiality of having it stamped precluded it from being treated as waste paper. ’ ’
The English statutes, therefore, while they declare that the unstamped instrument shall not be “good or available,” do not make it void. The instrument, as was said by Alderson, B., in Bristow v. Sequeville, before cited, “is a valid contract, although it cannot be given in evidence. ’ ’ The subsequent affixing of the stamp, as was said by Ford Campbell in Regina v. Watts, “relates back to the time of the signature.” The stamp acts are measures of revenue only, and the whole object of rendering the unstamped instrument unavailable to the parties is to compel the payment of the ditty.
Now it seems to me that the same construction must be applied to the statute of Maryland, which was evidently modeled after those of England. Although it declares that the unstamped instrument shall not be “valid or available for any purpose,” it allows it to be stamped subsequently. The subsequent stamping relates back to the time of execution, and makes the instrument as “valid and available” as if stamped at first. See also act of March, 1857, 1 and 2. In short, it contains every feature of the English statutes, upon which the construction I have been explaining has been established.
I am of opinion, therefore, that the statute of Maryland requiring certain instruments to be stamped is nothing more, as its title imports, than a measure for raising revenue for the benefit of that state. As a means of securing the payment of the duty, and for that purpose only, the payment of the duty is made a condition of the right to use the instrument in the courts of Maryland. To impose a like condition on the right to *'use the instrument here, would be lending the courts of Virginia to enforce the payment of revenue to the state of Maryland, contrary to the settled doctrine that the courts of one state will not enforce the revenue laws of another. Such a rule would not only be anomalous in principle, but inconvenient in practice, and inconsistent with the dignity of an independent state.
The result of these views is, that the court did not err in excluding the statute of Maryland from the jury.
Upon the trial, the defendants in the court below asked nine instructions to the jury. The 7th, 8th and 9th were refused, and the refusal of the 7th and 8th is assigned as error. These instructions are substantially the same, and affirm, that if the transaction between Eant and Miller & Mayhew involved the payment, or a contract for the payment, of interest at a greater rate than six per cent, per annum, the jury ought to find for the defendants.
The court had already instructed the jury that Miller & Mayhew could not be regarded as bona fide holders, if they acquired the note through a usurious transaction; so that it could not have understood these instructions as bearing on that proposition. They were, no doubt, understood by the court below, as they were treated in the argument here, as affirming that the rights of the plaintiffs were to be determined by the law of Virginia. This was maintained on several grounds: 1. That the law of Virginia was the lex loci of the contract. 2. That the provisions of the Maryland statute of 1845 are remedial, and cannot be enforced here on the principle of Sherman v. Gussett, 4 Gilm. R. 521, and other cases of that class (vide 7 Metc. R. 14; 5 Gray’s R. 599; 31 New Hamp. R. 582), and that only the act of 1704 can be enforced, which makes the usurious instrument void. 3. That the case is governed by the lex fori.
*1. If we look to the contract imported by the note, it was made in Maryland, and -was to be performed there. The mere signing of the blank piece of paper in Virginia did not create a contract. There was no contract until the blank had been filled up so as to make a note, nor until the note so made had been delivered to the plaintiffs. All this was done in Maryland. It was, therefore, ' a Maryland coniract. Drinscomb v. Bunker, 2 Metc. R. 8; Lawrence v. Bassett, 5 Allen’s R. 140; Cook v. Moffatt, 5 How. U. S. R. 295. If we look to the contract imported by the endorsement and transfer of the note by Fant to the plaintiffs, it wras likewise made in Maryland, and was governed by its laws.
2. The law of Maryland applicable to the case consisted of the first and second sections of the act of 1704, entitled “an act against excessive usury;” and the act of 1845, entitled “a supplement to an act entitled an act against excessive usury. ” The first section of the act of 1704 prohibited the taking of interest ata greater rate than six per cent, per annum; and the second section declared all contracts for a higher rate of interest to be utterly void. The act of 1845 provided that, in any suit at law or in equity thereafter to be brought on any contract, &c., in which any person shall seek to avail himself of the act of 1704, it shall be incumbent on such person to plead the same specially, and to set out the true amount due, principal and interest, at six per cent., and that judgment should be rendered in favor of the plaintiff for the amount of such principal and interest. The settled construction of these acts in Maryland, as appears by the evidence, is, that usurious contracts are not avoided under any circumstances, but are valid securities to the extent of the principal and six per cent, interest. In the view of the law of Maryland under the act of 1845, there *264 are two distinct contracts, or two distinct parts of the ‘same contract, one for the principal and six per cent. interest, which is valid, the other for the excess of interest above six per cent., which is void.
The second section of the act of 1704, which declared usurious contracts to be utterly void, was repealed by the third section of the act of 1845, which repealed all acts and parts of acts inconsistent with the provisions of that act. For the provision that the usurious instrument should be utterly void was inconsistent with the provision that the plaintiff should recover to the extent of the principal and six per cent, interest, and it was accordingly held in Baugher & als. v. Nelson, 9 Gill’s R. 299, that the second section of the act of 1704 was repealed by the act of 1845.-
It follows that if the provisions of the act of 1845 are such that they cannot be enforced in this state, then no part of the law of Maryland applies to this contract, and it must be enforced to its whole extent, unless affected by the lex fori. I do not think, however, that the provisions of the act of 1845 come within the principle of Sherman v. Gussett. But I do not think it worth while to enter into any discussion on that point.
3. It was argued that Miller & Mayhew cannot avail themselves of the law of Maryland to sustain the contract,to the extent of principal and six per cent, interest, because the contract violated that law, and that the courts of Virginia must apply the rule of our own law, and refuse to enforce the contract altogether. For this, Turpin v. Poval, 8 Leigh 93, was relied upon. That was the case of a bill in equity for relief from a contract for the payment of interest at the rate of ten per cent. One question was, whether the relief was to be granted on condition of paying the principal, without interest, according to the law of Virginia, or on condition of paying the principal with six per cent, interest, according to what ‘was assumed to be .the law of Pennsylvania. If it was a Virginia contract, it was clear that the Virginia rule must apply. That it was a Virginia contract was clearly shown by Judge Tucker, and is confirmed by Andrews v. Pond, 13 Peter’s R. 65. But Judge Tucker, with whom the other judg'es concurred, went further, and held that if it was a Pennsylvania contract the creditor had no right to claim any benefit under the law of Pennsylvania, because he had not made his contract with reference to that law, but in defiance of it. In this connection he said: “A contract made in any state contrary to its laws, must in any other state be looked upon as uninfluenced by them, and must therefore always fall within the influence of the lex fori. The foreign state can indeed only act upon.the contract remedially.” I understand Judge Tucker’s meaning to be, that as the contract was usurious under the law of Pennsylvania, the debtor was entitled to relief in equity from the usurious excess, and as the courts of Virginia could not administer any remedies but such as the law of Virginia affords, the relief could only be given according to that law.
There are expressions in the subsequent part of Judge Tucker’s opinion, which, taken in their strict sense, would seem to import, that, because the taking of interest at a greater rate than six per cent, is against the policy of Virginia, the courts of Virginia will refuse to enforce a contract for a greater rate of interest, though valid where made. This, we know, would be in conflict with a well settled principle, on which our courts act every day. Usurious contracts do not fall within the principle cited by Judge Tucker from the Conflict of Laws, in reference to vicious and immoral contracts. What was said upon that subject was wholly unnecessary to - the decision of the case.
But Turpin v. Poval is no authority in the present *case, because the contract which Miller & Mayhew seek to enforce in this case, to. wit, the contract for the principal and interest at six per cent., was valid under the law of Maryland. The ground, therefore, on which the remedial provisions of the lex fori were held applicable in that case does not exist in this. It is the common case of a contract valid under the lex loci.
I am of opinion, therefore, that the instructions were properly refused. The only remaining error assigned is the refusal of the court to grant a new trial.
There can be no doubt, according to well settled principles, that F. L. Fant had the right to fill up the blank pieces of paper by writing over the signatures- promissory notes for such sums, and with such dates and times of payment as he might choose, and that the notes so made would be valid in the hands of bona fide holders for value. Russell v. Langstaffe, Douglas’ R. 495; Douglas, &c. v. Scott & al., 8 Leigh 43; Orrick v. Colston, 7 Gratt. 189. And it is equally well settled that the knowledge on the part of the plaintiffs that the signatures of the defendants were attached to mere blank pieces of paper, and that the notes were filled up by Fant in the absence of the defendants, does not impair their right to be considered bona fide holders of the notes. Same cases. Also, Huntington & al. v. Branch Bank of Mobile, 3 Alab. R. 186; Decatur Bank v. Spence, 9 Id. 800; Fullerton v. Sturges, 4 Ohio St. R. 529. There is no proof that the defendants imposed any restrictions upon Fant as to the manner in which the blanks should be filled up, or as to the purpose for which they should be used. It is not necessary, therefore, to inquire whether the knowledge of the plaintiffs that the papers signed by the defendants were blanks, afterwards filled up by Fant, imposed on them the duty of inquiring into the limitations which the defendants plac.ed upon Fant’s authority. *The cases upon this point are not agreed. See 3 Alab. R. 186, 9 Ib. 800; 4 Ohio St. R. *265 529, above cited; Avode v. Dixon, 5 Eng. L & Eq. R. 512; Hatche v. Scarles, 31 Ibid 219. See also 1 Parsons on Notes, &c. 111, 115.
It is hardly necessary to say that if the plaintiffs in the court below were bona fide holders for value, it was no defence that they knew that the note was made for accommodation only. Story on Notes i 194. And it follows from what has been said, that the question whether they were bona fide holders for value depends upon precisely the same principles as if the note had been filled up in its present form by the defendants, and had been given for value.
As a general rule the possession of the note by the endorser is prima facie evidence that he holds it bona fide and for value, and there is nothing in this case to take it out of this general rule. Wilson v. Lazier, 11 Gratt. 477; Goodman v. Simonds, 20 How. U. S. R. 343; Murray v. Lardner, 2 Wallace U. S. R. 110. The burden of proof, therefore, rests upon the defendants to impeach the title of the plaintiffs by rebutting this legal presumption.
It appears from the certificate of facts that the consideration on which the four notes were transferred by R. R. Rant to Miller & Mayhew, consisted of cash advanced, together with certain notes due by said R. D. Rant to various persons, payable at subsequent times, which the plaintiffs assumed to pay, and did pay, which said notes and cash amounted to $15,074.44; exceeding by $74.44 the amount of said four notes.
These facts constituted a valuable consideration to the whole amount of the four notes. That the agreement to take uj) Rant’s notes in consideration of the transfer of the four notes, constituted a valuable consideration to that ^'extent, is too clear to require argument or authority to prove it. The advances of cash on the 28th and 29th, it may fairly be inferred, were made as part of the consideration of the transfer agreed upon at the time. As to the advances made prior to the transfer of the notes, while it is not stated as a fact that the notes were received in payment of them, the mode of stating the account justifies the inference that they were. If the defendants allege the contrary, the burden is on them to show it. That the payment of these previous advances was a valuable consideration, and in the usual course of business may now be considered as fully established in Rng-land and in this country. 1 Parsons on Notes, &c. 218, 228.
I do not wish to be understood as saying that the position of the plaintiffs would have been a worse one, if the notes had been taken as security only for these prior advances; but as that question does not arise, it is not necessary to express any opinion upon it. Vide McCarty & als. v. Roots & als., 21 How. U. S. R. 432; 1 Parsons ubi supra; Davis v. Miller, 14 Gratt. 1.
The only remaining question in the case is, whether the title of the plaintiffs can be impeached on the ground of usury.
As I have -already stated, this question must be determined by the law of Maryland. All that is before us in reference to that law is what is contained in the certificate of facts, in which it is said that by that law ‘ !a contract or evidence of debt, though tainted with usury, is not null and void, but is a valid contract upon which an action may be maintained for the recovery of the amount of principal and interest actually due on said contract or evidence of debt, and is only void to the extent of the usurious interest.” We must take this to be a true statement of the law of Maryland, as undoubtedly it is, and are not at liberty to look into the '^statutes and evidence in bill of exceptions No. 2, as we were asked to do by the counsel for the plaintiffs in error.
That the statement of account between the plaintiffs and R. D. Rant contained usurious charges, is not disputed. But it appears distinctly from the certificate of facts that no part of these charges entered into the consideration for the transfer of the four notes, and that they were all embraced in the note of $1,327.44, executed at the same time, and still unpaid. If the law had made the whole transaction void on account of the usury, the transfer of the four notes would have been affected by the usury, although it was embraced altogether in the note for $1,327.44; because it was all one transaction. Roberts v. Tremayne, Cro. Jac. 507. But the law of Maryland makes a separation between the good and the bad parts of the transaction — between the money advanced and six per cent, interest upon it, which is unaffected by the usury, and the excess above six per cent., which cannot be recovered. I do not see why the parties may not themselves make this separation in the beginning, by giving one security for the debt and lawful interest, and another for the usury; and if that is done, it seems to me that the law of Maryland will enforce the former and only avoid the latter, especially if it appears that the latter has not been paid. On this ground, I incline to think that the consideration for the transfer of the four notes is wholly unaffected by the usury. But if I am mistaken in this view, I still think that the> usury does not prevent the plaintiffs being considered bona fide holders of the four notes. The contract upon which they received these notes was valid to the extent of the principal and legal interest, and to that extent no right of the plaintiffs, arising out of that contract, is affected by the usury. To that extent they have the same right to enforce the contract by action, and to enforce all securities, as if there *had been no usury. The note for $1,327.44 being still unpaid, the recovery of the plaintiffs upon the four notes does not enforce the contract beyond the extent allowed by the statute.
This view is fully sustained by the Court of Appeals of Maryland in Gwynn v. Lee, *266 9 Gill’s R. 137. In that case, a note had been hypothecated with Gee as security for the payment of money lent at more than legal interest, and one of the questions was, whether, in consequence of the usury, Gee was a bona fide holder. It was held by Chancellor Johnson that under the law 'of Maryland the contract being valid to the extent of principal and legal interest, Gee was a bona fide holder to that extent, notwithstanding the usury; and his decree was affirmed by the Court of Appeals.
I think there is no error in the judgment, and that it ought to be affirmed.