Staples, J.
The note which is the subject of the pres-en^ controversy, was executed in May, 1861, by Norborne Berkely and Charles E. Berkely, to Broun & Co., for the sum of eighteen hundred and sixty-five dollars and fifty cents, and was negotiable and payable six months after date at the Exchange hank, Alexandria. It was deposited by the payees in the hank for collection, hut not being paid at. its maturity, was subsequently withdrawn by C. E. Broun, the defendant, who was one of the firm of Broun & Co., or himself constituted that firm, and was retained in his possession until the year, 1868, when he transferred the note to the plaintiffs, Hopkins, Hull & Atkinson, of Baltimore. At the time of the transfer, the words “ protest waived ” were written above the names of Broun & Co., which had been placed on the note at the time it was deposited in bank. In the meantime, between the maturity of the note and its transfer in 1868, the charter of the Exchange hank had expired, and the bank .had ceased to exist.
Upon this state of facts, .the question is presented, whether the defendant, C. E. Broun, is to be considered an endorser according to the law merchant, or as the mere assignor of the note according to the rules of the common law. The question becomes a very important one, in view of the fact, that as assignees, the plaintiffs may have lost their recourse upon the defendant by the want of due diligence in pursuing the makers.
The whole difficulty in the case grows out of the peculiar provisions of the Virginia statute, which declare those promissory notes only negotiable which are payable in this State at a particular bank, or at a particular office thereof for discount and deposit, or at *27 the place of business of a savings institution or savings bank. Code of 1873, chap. 141, sec. 7. The Freemans Bank v. Ruckman, 16 Gratt., 126. The point, fore, to be determined is with respect to the operation and effect of an endorsement of an over-due note payable at a bank which had. ceased to exist more than five years before the endorsement was made. For although the name of Broun & Co. was placed on the note before its maturity, the evidence shows it was merely for .the purpose, of collection. They were at that time the holders and payees of the note. They must of course have put their names on the note as authority to the bank to collect. Such an endorsement does not pass the title or render the party making it liable as endorser. It is plain, therefore, that the endorsement to the plaintiffs must be regarded as made at the time of the transfer to them in 1868.
Indeed, this has not been controverted by any one. So treating it, let us consider the principles controlling the case. According to a well settled rule of commercial law, an unqualified endorsement of a negotiable note operates as a transfer and assignment of the paper to the endorsee, and an executory contract by which the endorser agrees upon certain conditions to pay the note to the endorsee. In legal effect, the endorser guarantees that the note will be paid according to its tenor, provided it is presented to the maker at maturity, and if not so paid, he, the endorser, upon due notice, will pay it. Edwards on Bills, 284; 1 Daniel on Xeg. In., sec. 669, ed. 1879. The endorsement operates as a new and substantive contract, embodying all the terms of the instrument endorsed. 1 Daniel on bTeg. In., sec. 669. Presentment and demand of payment, and notice of non-payment, are conditions precedent, upon the performance of which the liability of the endorser depends. Watkins v. Crouch, 5 Leigh, *28 522. And when, in the body of the note, a place of payment is designated, the endorser has a right to prethat the maker has provided funds at such place to pay the note, and a right to require of the holder to for payment at such place. If the note is payapie a pan]5; an(j the hank is not the holder, an averment and proof of demand at the place appointed in the note are indispensable. The Bank of the United States v. Smith, 11 Wheat. R., 171, 183.
These principles apply to an endorsement during the currency of the note before its maturity. After the dishonor of the note, different considerations, to some extent, govern. The mere fact that the note is overdue does not destroy its negotiability. It still retains its negotiable quality, and may be negotiated as freely as during its currency. But the rights, duties, and obligations of the parties are by no means the same. If, by the terms of the note, a day is named for payment, and that day has passed when the endorsement is made, it becomes, according to legal effect, a note payable on demand, so far as the endorser is concerned. In that case, presentment and demand upon the maker must be made within a reasonable time at the place specified in the note, and due notice of the dishonor given to the endorser.
Although (says Edwards) a note remains negotiable after it has been dishonored, still, in one sense, the endorsement and transfer of a note over-due is a renewal of the instrument, which is then declared by law payable within a reasonable time upon demand, and the endorser is bound only upon the same conditions of demand upon the drawer, and notice of non-payment, as any other endorser. Edwards on Bills and Promissory Rotes, 261.
It has been repeatedly held that the endorsement of an over-due note is equivalent to the drawing of a *29 bill of exchange payable at sight, the endorser being the drawer, the maker being the acceptor, and the ■endorsee the payee.
The endorsement of a bill or note is not merely & transfer thereof, hut it is a fresh and substantive undertaking, embodying all the terms of the ment endorsed in itself. 1 Daniel on Negotiable Instruments. In Brown v. Davis, 3 Term. R., 80, Buller J. said, when a note is endorsed after it becomes due, he considered it as a note newly drawn by the person •endorsing it. Story on Promissory Notes, sec. 129; Young v. Bryan, 6 Wheat. R., 146; 2 Rob. Prac., 239. See especially Leidy v. Tammany, 9 Watts., 353. So entirely distinct and independent is the contract of the endorser from that of the maker, that at common law, a separate action against each was indispensable. Patterson v. Todd, 18 Penn. St. R., 426.
It follows as a necessary consequence, and, indeed, is well settled, that the endorsement must also he negotiable in order to create the rights and obligations between the endorser and endorsee according to the law merchant. It may he conceded, that as a general rule, an endorsement of a note during its currency adheres to the instrument and partakes of its nature. So that if the note he negotiable, so will the endorsement. The reason has been already stated. The endorsement is equivalent to a new note, embodying in itself all the terms of the note endorsed. But there are many eases in which a person endorsing a negotiable note is held not to he an endorser in the commercial sense of the term, but an assignor, guarantor or promissor, as the case may be. An endorsement may be restricted or conditional—it may amount to nothing more than a guaranty—it may he made in a State where the note itself, if originally drawn, would not be negotiable. A note made and endorsed in a *30 country by whose laws it is negotiable, would be recognized as negotiable anywhere. But if the endorsement be made in a country by whose laws a transfer by endorsement is not allowed, the endorsement would not be negotiable, although the note itself might be. And so I take it if under the laws or usages of a particular country, a fact or state of things 'essential to the negotiability of the note has ceased to exist when the endorsement is made the endorsement as between the immediate parties, does not confer the rights or impose the duties resulting from an endorsement, according to the law merchant.
The endorsement of an ovér-due note cannot relate back to the date' of the note. As a new and independent contract, it only takes effect from the time it is made, and must be determined by the laws then in force, and the circumstances then existing.
Inasmuch as under the Virginia law- a note is not negotiable unless payable at a bank,- it would seem to follow that if at the time the endorsement is made, the note is over-due, and the bank has ceased to exist, the endorsement itself as a new and substantive contract, creates no other duties and obligations than those resulting from an ordinary assignment.
In the case before us, the endorsement written out in full is, in effect, an order by the defendant, Broun, as endorser or payee upon the maker, as acceptor to pay to the plaintiffs as endorsee on demand, the sum of eighteen hundred and sixty-five dollars, negotiable and payable at the Exchange bank, Alexandria, with an implied guaranty that the money would be paid at the bank named upon demand and notice within a reasonable time.
"When the endorsement was made, the bank had ceased to exist more than five years. It would seem a *31 legal impossibility to predicate negotiability of such a transaction.
It now remains to inquire whether the addition the words “ protest waived ” has had the effect either to change the character of the endorsement, or some way to alter the position of the parties. In case of a foreign bill of exchange, the word “ protest ” means the taking of all the steps necessary to fix the liability of the drawer or endorser upon the dishonor of the paper. Daniel on Keg. In., secs. 929, 1095. The “waiver of protest” in such case must, therefore, be ordinarily construed as a waiver of the steps necessary for that purpose. But in the ease of a negotiable note, a protest is unnecessary. Under our statute the note may be protested and a joint action of debt be maintained thereon against all the parties, maker and endorsers; but the protest is not at all essential to a right of recovery. All that is incumbent upon the holder to sustain an action against the endorser, is to prove demand and notice. Upon this point as to the necessity of protesting or not protesting a negotiable note, some of the judges do not' desire to be understood as expressing any opinion.
As applied to a negotiable note, the words “protest waived,” according to their literal acceptation must, therefore, be a mere nullity. By a sort -of general usage they seem, however, to have a more extensive significance when applied to ordinary commercial paper. The authorities, however, are not entirely agreed as to their precise meaning. By some of them it is held they amount merely to a waiver of demand upon the maker. By others they include a waiver of both demand and notice; and this is the more general and better received opinion. 2 Daniel on Keg. In., sec. 1095, and eases there cited; 1 Parsons on Bills and *32 Notes, 876; 2 Parsons, 240-5; 1 Parsons’ Mer. Law, 118.
In the case of Union Bank v. Hyde, 6 Wheat. R. 572, Mr. Justice Johnson strongly intimated that the words “protest waived” of themselves could not be construed as dispensing with demand and notice in the case of a negotiable note. He was of opinion, however, that the words were ambiguous, and might be explained by parol testimony.
In the present case, no evidence has been offered tending to show the meaning the parties themselves attached to the “waiver of protest.” It may be that both of them were satisfied of the solvency of the makers; both knew or believed the note would not be paid upon presentment and demand, and without understanding the precise nature and legal effect of the transaction, they intended to provide against any future difficulty growing out of the failure to make demand and give notice,- according to the law merchant.
There is one fact tending, however, to show that the plaintiffs certainly did not consider the endorsement as creating the peculiar rights and obligations incident to an endorsement of negotiable paper. It appears that not long after they received the note, they instituted thereon an action at law against the maker in the name of the defendant, Broun, as payee, for their own benefit; and this action was prosecuted to judgment and execution. If, according to the present contention, the plaintiffs were endorsees of the paper in the commercial sense of the law, they were clothed with the legal title, and the suit must have been brought in their own names. A suit in the name of the payees, though by no means conclusive, would seem to indicate, in some measure, the light in which the transaction was regarded, both by counsel and by the parties at the time. Be that as it may, if the endorsement was not in fact *33 of a negotiable character, neither the opinion nor the intention of the parties 'would make it so. In the case of Freemans Bank v. Ruckman, 16 Gratt. 126, the ties believed the instrument negotiable, and so treated it; this court held, however, that the note was not negotiable.
It has been supposed, however, that the case of Woodward & Bro. v. Gunn, 2 Va. Law Journal 248, asserts a different doctrine; that this court had there decided that as the parties intended to execute negotiable paper, and thought the notes were negotiable, they must be so held, although not in fact so. This is an entire misapprehension, as a careful examination of the case will show. In the opinion of the President, much stress was, of course, laid upon the supposed intention of the parties, because the intention was an important element with respect to the authority of the holder to fill the blanks in the notes. These blanks had been so left on purpose, because it was not known at which of the banks the loan could be obtained. It was proved to be a frequent custom in the city of Richmond, as it is elsewhere, for notes endorsed for accommodation to be left blank as to the place where payable, in order that the blank might be filled by the holder, and it was farther proved that express authority had been given to fill the blanks, and that the parties throughout treated the notes as though they were negotiable. This court was of opinion that although the blanks had not been actually filled with the name of the bank, they might have been so filled at the time or afterwards, or even at any time before judgment. Whether the decision be right or wrong, it was not, as will be seen, placed upon any such ground as that mere intention can make a non-negotiable note negotiable. If authority is needed in support of the decision, it may be found in 2 Parsons on Rotes and Bills 568; 1 Daniel on Reg. *34 In., § 145, § 90; Orrick v. Colston, 7 Gratt. 189; Gillaspie v. Kelley, 41 Ind. R. 158; Spiller v James, 32 Ind. R. 203.
j y^ therefore, to be perfectly clear, that if both parties thought the paper negotiable, and under that errgr ¿efendant agreed to waive demand and notice, still, if as a matter of law, demand and notice were unnecessary, the waiver was a mere nullity, and did not change the real nature of the contract. It can hardly be supposed that the defendant in waiving pro-. test intended thereby to waive any other legal right; that he was willing to remain indefinitely bound for the amount of the debt whenever called upon, although the plaintiffs may have been guilty of the grossest laches with respect to the maker.
It has been said, however, that the plaintiffs may have been misled by the waiver of protest. Supposing they were endorsees, they may have failed to take such active steps against the maker as they would have taken' if they had considered themselves mere assignees. If this be so—if the plaintiffs have been misled to their prejudice by the conduct of the defendant, it is a matter for the jury to determine upon all the evidence before it. The court cannot undertake to’ say in advance that there is any ground of estoppel. It would, however, be very difficult to found an estoppel upon the mere misconception of the nature and legal effect of an instrument of writing. The plaintiffs were in possession of the note, and must be presumed to know and understand at their peril their rights and obligations under it.
My opinion, therefore is, that the “ waiver of protest” does not at all change the legal operation and effect of the endorsement. As assignees, the plaintiffs were under no obligations to make any demand upon the maker, and give notice to the defendant of non *35 payment, but they were bound to exercise due diligence in suing the maker, obtaining judgment and execution, as a condition precedent to their right of recourse the defendant, unless, indeed, the makers were notoriously insolvent. The defendants offered to show that the plaintiffs had not exercised due diligence in particular; that they might have collected the money from the makers, if they had not been guilty of gross negligence; but the circuit court rejected the evidence; and in this I think it erred.
The defendant also offered to prove that the plaintiffs had instituted a chancery suit against the makers, but had conducted it so negligently and improperly as to result in the loss of the debt. I think the court, for the same reason, erred in rejecting this testimony.
It also erred for a like reason, in not permitting the defendant to show that the bank had ceased to exist at the time the endorsement was made. The same ques- ■ tions are substantially involved in all the bills of exception, I am therefore of ópiüion, that the judgment of the circuit court must be reversed, and the cause remanded for a new trial in conformity with the views herein expressed. In conclusion I will say, that while the questions here involved are not free from difficulty, the result attains the justice of the case.
The other judges concurred in the opinion of Staples, J.
The judgment was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in rejecting the evidence set out in the first, second, and third bills of exceptions of the plaintiff in error. Wherefore for the errors aforesaid it is considered by the court that the judgment of the circuit court be *36 reversed and annulled, and that the defendants in error Pay tiie plaintiff in error, his costs by him, ex-in the prosecution of his writ of error and supersedeas aforesaid here. And this court proceeding render such judgment as the said circuit court ought ^.0 pave rendered, it is considered that the verdict of the jury be set aside and a new tidal awarded the plaintiff in error. Upon which new trial the said circuit court is instructed to admit the evidence set out in said first, second, and third bills of exception, if the same shall again be offered by the plaintiff in error.
Judgment reversed.